# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUAN DE LA LUZ-LIMON,** *Petitioner*, | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 26-8637** |
| **v.** | : | |
| | : | |
| **MARKWAYNE MULLIN, *et al.*,** *Respondents*. | : | |
| | : | |

## ORDER

**AND NOW**, this 18th day of November 2026, upon consideration of Petitioner Juan De La Luz-Limon's, ("Petitioner"), *petition for writ of habeas corpus*, (ECF 1), and Respondents', (the "Government"), response in opposition, (ECF 4), it is hereby **ORDERED** that the petition for writ of *habeas corpus* is **GRANTED**, as follows:[1]

---

[1] Petitioner Juan De La Luz-Limon is a native and citizen of Mexico. (ECF 4-1, at 2-3). Petitioner allegedly encountered a Border Patrol Agent on the Rio Grande Valley, Texas Border Patrol Sector on July 7, 2022, and, thereafter, was transported to and processed at the Rio Grande Valley Sector Centralized Processing Center in Donna, Texas. (*Id., at 3*). More than four years later, on November 10, 2026, Petitioner was encountered by Immigration and Customs Enforcement, ("ICE"), in New Cumberland, Pennsylvania, when ICE responded to a call from the Fairview Township Police Department regarding a traffic stop involving Petitioner. (*Id.*; ECF 4-2, at 2). Petitioner was the driver of a van occupied by "8-10 individuals." (ECF 4-1, at 3). Upon request, Petitioner provided identifying information, which agents used to search him within their databases. (*Id.*). ICE's searches yielded no criminal history for Petitioner. (*Id.*, at 4). Without making an individualized dangerousness and flight-risk determination of Petitioner, ICE agents prepared and issued a handwritten warrant for Petitioner's arrest and took him into custody. (*Id.*). Petitioner was transported to the ICE office in York, Pennsylvania, for processing, and at which time he was served a Notice to Appear, a copy of the warrant for his arrest that was generated during the processing, as well as a Notice of Custody Determination. (ECF 4-3, at 2). From there, Petitioner was transported to the Philadelphia Federal Detention Center ("FDC"). (ECF 4). Though Petitioner did not request a custody determination by an immigration judge (*i.e.*, a bond hearing), he is scheduled to appear before an immigration judge at the Immigration Court in Elizabeth, New Jersey, on November 23, 2026. (ECF 4-3, at 2). Since November 11, 2026, Petitioner has been detained at the FDC. (ECF 1, at 2).

In his *habeas* petition filed on November 12, 2026, Petitioner avers that his detention violates the Immigration and Nationality Act, ("INA"), his due process rights under the Fifth Amendment of the United States Constitution, and the Administrative Procedure Act, ("APA"). (*See* ECF 1). As such, Petitioner seeks immediate release, the return of his personal property and documentation, declaratory relief, an award for costs and attorney's fees, alongside an injunction preventing his continued detention. (*Id.* at 12).

In its response, the Government argues that Petitioner was lawfully detained pursuant to 8 U.S.C. § 1226(a) and that the Government has followed the requirement of § 1226(a). (*See* ECF 4). The Government acknowledges that this Court has previously found their arguments unavailing in recent cases, notably — a position shared by other judges in the District. (*Id.*, at 3) (citing *Figueroa Castro v. Warden,*

*Phila. Fed. Det. Ctr.*, No. 2:26-cv-7526 (E.D. Pa. Oct. 8, 2026), and *Lojano Tigre v. Jamison*, No. 2:26-cv-7562 (E.D. Pa. Oct. 14, 2026)). Nonetheless, the Government reasserts the same unavailing arguments for appeal preservation purposes and refrains from briefing the constitutional and APA claims. (ECF 4, at 2).

Specifically, as to Petitioner's INA contention, the Government argues that Petitioner has failed to exhaust his administrative remedies, a process required to challenge detention under § 1226(a), *to wit*, attending a bond hearing and appealing the result, if necessary, to the Board of Immigration Appeals, ("BIA"). (*Id.* at 4). The Government also argues that, in any event, it has the statutory and discretionary authority to make detention decisions under § 1226(a) during the pendency of removal proceedings, and that it need not conduct a pre-detention review of a detainee's dangerousness or risk of flight. (*Id.* at 3). More specifically the Government argues that, upon Petitioner's arrest, ICE simultaneously placed Petitioner in removal proceedings when it issued a Notice to Appear, ("NTA"), and charged him as removable under § 212(a)(6)(A)(i) of the INA ("INA"), for being present in the United States without first being admitted or paroled. (ECF 4, at 3). The Government further argues that, as part of this process, ICE engaged in a custody determination and concluded that Petitioner should be detained. (*Id.*). However, Petitioner's I-286 and I-862 forms are unsigned and incomplete. (ECF 4-2; 4-3).

Under these circumstances and after considering the parties' arguments, this Court finds that Petitioner's detention pursuant to § 1226(a) violates the INA. Specifically, § 1226(a) provides: "[O]n a warrant issued by the Attorney General, [a non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a). This provision "establishes a discretionary detention framework." *Dos Reis v. McShane*, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026) (citing *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018)); *see also Regalado-Nauta v. Jamison*, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026) ("Detention under Section 1226(a) is discretionary."). Further, Section "1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk." *Buele Morocho v. Warden Phila. Fed. Det. Ctr.*, 2026 WL 2546223, at *1 (3d Cir. Aug. 28, 2026) (citing 8 U.S.C. § 1226(a)(2); 8 C.F.R. § 1236.1(c)(8)). "The statute's implementing regulations" effectuate this intent by "establish[ing] a framework for initial custody determinations and subsequent review by an immigration judge and the [BIA]." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citing 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1)). This framework includes "a right to an individualized detention determination and a bond hearing." *Kashranov v. Jamison*, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)). "The initial custody determination requires an individualized determination as to whether the non-citizen is a danger to property or persons and is likely to appear for any future proceeding." *Regalado-Nauta*, 2026 WL 2740528, at *3 (citation modified) (quoting *Lopez Benitez v. Francis*, 795 F. Supp.3d 475, 492-93 (S.D.N.Y. Aug. 13, 2025)).

Here, there is no indication or evidence that the Government conducted any such determination. Rather, the exhibits included with the Government's response show only that DHS alleges Petitioner is not a citizen or national of the United States but is a citizen of Mexico; Petitioner entered the United States without authorization and without being admitted or paroled; and Petitioner was detained and placed in ICE custody because of his allegedly unlawful residence status. (ECF 4, ECF 4-1, ECF 4-2, ECF 4-3, ECF 4-4). The I-213 form describing DHS's processing of Petitioner also indicates that he is subject to an executive order titled, "Protecting the American People Against Invasion." (ECF 4-1, at 4). This Executive Order directs DHS to "take all appropriate actions to ensure the detention of [noncitizens] apprehended for violations of immigration law." Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). Further, the I-286 "Notice of Custody Determination" form that Petitioner received does not confirm whether Petitioner is to be "Detained by the Department of Homeland Security," or "released" under any conditions, and offers no rationale for his detention. (ECF 4-4, at 2).

---

Nonetheless, by reasserting their same argument from *Figueroa Castro* and *Lojano Tigre,* the Government insists that there has been an individualized determination as to Petitioner's detention. (ECF 4; *see Figueroa Castro*, No. 2:26-cv-7526; *Lojano Tigre*, No. 2:26-cv-756). As this Court found therein, this determination is insufficient to detain Petitioner pursuant to § 1226(a). "Reliance on status alone amounts to 'a *per se* determination' that 'comports not with 1226(a), but instead with [the Government's] desired policy of detention.'" *Dos Reis*, 2026 WL 1746649, at *4 (alteration in original) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026)). The Government's reliance on legal status alone as a "justification for the process Petitioner received . . . is [] not sufficiently individualized for purposes of Section 1226(a), [and] if taken to its logical conclusion, permit[s] ICE . . . to grant itself license to ignore the facts that do not fit its desired outcome," such as the absence of any indication here that Petitioner is dangerous or a flight risk. *See Cajamarca-Janza v. Soto*, 2026 WL 1506777, at *4 (E.D.N.Y. May 29, 2026).

The Government also argues that Petitioner must exhaust administrative remedies prior to challenging the lawfulness of his detention. This argument is unavailing for two reasons. First, Petitioner here seeks *habeas* relief pursuant to 28 U.S.C. § 2241. (ECF 1, at 4). "Section 2241 *habeas* petitioners are ordinarily required to exhaust administrative remedies, but the statute itself contains 'no [explicit] exhaustion requirement.'" *Dos Reis*, 2026 WL 1746649, at *3 (alteration in original) (quoting *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000)). "[W]here exhaustion is not clearly mandated by statute, a futility exception exists." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003). "The exception is appropriate when the decisionmakers in the administrative process will almost certainly reject petitioner's requested relief." *Ndiaye v. Jamison*, 2025 WL 3229307, at *4 (E.D. Pa. Nov. 19, 2025), (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Here, exhaustion requirement is excused because Petitioner challenges his deprivation of liberty as a violation of the Due Process Clause and the exercise of his currently available administrative remedies would be futile. *See Dos Reis*, 2026 WL 1746649, at *3. On September 5, 2025, the Bureau of Immigration Appeals, ("BIA"), issued a precedential decision holding that an immigration judge has no authority to consider a bond request from any individual who entered the United States without admission. *See Alpha Ousmane Diallo v. J.L. Jamison, et al.*, 2026 WL 2547269, at *3 (E.D. Pa. Aug. 28, 2026) (citing *In re Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025)). Because immigration judges are bound by the BIA's holding in *Yajure Hurtado*, they must deny requests for bond hearings from detainees like Petitioner. As such, Petitioner's request for a bond hearing before an immigration judge and any appeal of the inevitable denial to the BIA, will be futile before seeking review in federal court of his detention. *See Ndiaye*, 2025 WL 3229307, at *4.

Second, the bond hearings provided by Section 1226(a) do not retroactively cure the initially unlawful detention of Petitioner. *See Dos Reis*, 2026 WL 1746649, at *3 ("A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it."); *Lopez Benitez*, 795 F. Supp. 3d 475, 497 (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding that "a bond hearing before an immigration judge is a 're-determination' of custody — it assumes that a valid custody determination was made in the first instance."). Therefore, even if Petitioner did request a bond hearing, that hearing would be futile and inadequate to correct his detention. Under these circumstances, this Court finds that no administrative exhaustion is required before Petitioner can challenge the lawfulness of his detention in *habeas* as a violation of the INA. *See Ndiaye*, 2025 WL 3229307, at *4; *Lopez Benitez*, 795 F. Supp. 3d at 497.

As to Petitioner's due process constitutional arguments, this Court also finds that Petitioner's detention violates his Fifth Amendment right to due process. The "Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In the civil immigration detention

context, due process requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context); *Regalado-Nauta*, 2026 WL 2740528, at *3. As such, courts applying *Mathews* weigh the following factors:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Applying the *Mathew*s factors, the *Buele Morocho* Court concluded that "detention without bond of noncitizens who have lived in the United States for extended periods of time with no criminal records violates due process." 2026 WL 2546223, at *8-10.

Here, this Court reaches the same conclusion and needs no additional briefings to do so. Clearly, Petitioner holds a critical interest in remaining free from detention, regardless of the length of such detention. *See Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Zadvydas*, 533 U.S. at 690); *Buele Morocho*, 2026 WL 2546223, at *9 (citations omitted) (recognizing that immigration detention implicates the constitutionally protected interest in avoiding physical restraint). Further, the record reveals no procedures followed by the Government to protect Petitioner from an erroneous deprivation of this interest, including the bond hearing, of right, that he requested. As the *Buele Morocho* Court held, "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest." *See Buele Morocho*, 2026 WL 2546223, at *9 (internal citations omitted); *see also Regalado-Nauta*, 2026 WL 2740528, at *4 (finding that Petitioner's "detention risks erroneously depriving him of his rights because [he] has not yet been provided an opportunity for a neutral decisionmaker to make an individualized determination as to whether [Petitioner] poses a flight risk or a danger to the community."). Also, "while the Government has a legitimate interest in preventing the release of dangerous noncitizens and those who fail to appear at future hearings[ — a situation not applicable in this matter —] that interest is not outweighed by the balance of the first and second *Mathews* factors," particularly where the Government has not assessed whether Petitioner is dangerous or will fail to appear at future hearings. *Regalado-Nauta*, 2026 WL 2740528, at *4 (citing *Buele Morocho*, 2026 WL 2546223, at *10). The balance of the *Mathews* factors, in this matter, weigh in favor of finding that Petitioner's detention violates his due process rights.

As to Petitioner's APA claims, the extent of the argument is that "[t]he APA forbids agencies from acting in a manner that is 'arbitrary, capricious, [or] an abuse of discretion,' especially where — as here — an agency's deviation from settled practice imposes severe restraints on liberty." (ECF 1, at 9). Petitioner does not explain how the Government's actions, in this case, are 'arbitrary, capricious, or an abuse of discretion.' As mentioned, the Government also refrained from briefing their APA argument. (ECF 4, at 3). Although neither side has clearly argued whether Petitioner's detention violates the APA, having already found Petitioner's detention to be unlawful on statutory and constitutional grounds, this Court need not address the APA claim further. *See Buele Morocho*, 2026 WL 2546223 (affirming a grant of *habeas corpus*, which held the detention to be unlawful solely for violating the INA).

In conclusion, for the reasons set forth, this Court finds that Petitioner's detention violates the INA and Petitioner's constitutional due process rights. "A court . . . entertaining an application for a writ of *habeas corpus*" is empowered to "dispose of the matter as law and justice require." 28 U.S.C. §§ 2241(a), 2243. "The traditional function of the writ of *habeas corpus* is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf v. Geren*,

1. The Government's detention of Petitioner violates the Due Process Clause of the Fifth Amendment of the United States Constitution, Immigration and Nationality Act, and the Administrative Procedure Act;
2. Because Petitioner is in custody in violation of the law and the Constitution of the United States, Petitioner is to be ***immediately*** released from the Federal Detention Center in Philadelphia, Pennsylvania;
3. The Government is further directed to return to Petitioner any and all funds, forms of identification, and property which may have been seized from him at the time of his arrest on November 10, 2026; and
4. The Government is directed to certify compliance with the Court's Order by filing such certification on the docket by noon, on November 19, 2026.

The Clerk of Court is **DIRECTED** to mark this case **CLOSED**, upon receipt of the Government's certification.

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

553 U.S. 674, 693 (2008)). Considering the statutory and constitutional law violations set forth herein, this Court finds that the law and justice require Petitioner's immediate release. Accordingly, Petitioner's writ for *habeas corpus* is granted.